WILLIAM HAMSHER

*v.*

ANNA HAMSHER *et al.*

*Filed at Springfield March 31, 1890.*

1. CORPORATIONS—*mode of organizing—of a corporation not for pecuniary profit.* A corporation not for pecuniary profit may be organized as follows: Three or more persons must associate themselves together for some lawful purpose, make a certificate stating the name of the association, its business, the objects of its formation, the number and names of its trustees, managers or directors, etc., and file such certificate with the Secretary of State, who thereupon issues a certificate of organization.

2. SAME—*as to religious society—mode of incorporation.* To incorporate a religious society, the church, congregation or society holds a meeting and elects or appoints three or more of its members "as trustees, wardens and vestrymen," etc., and adopts a corporate name ; and when the chairman or secretary of the meeting has made, and filed in the recorder's office of the county, an affidavit as to the holding of such meeting, and its action, as aforesaid, the body politic and corporate is created.

3. SAME—*quantity of land to be held—limitation to ten acres—societies for religious worship—as distinguished from benevolent or missionary societies.* Section 42 of the act concerning corporations, approved April 18, 1872, which limits their power to take land by gift, devise or purchase, to ten acres, applies only to those churches, congregations or societies which are organized for the purpose of religious worship, and not to organizations commonly called benevolent or missionary societies.

18—132 ILL.

4. The written certificate of the objects of a corporation, filed in the office of the Secretary of State, stated that the name of the corporation was "The Young Men's Christian Association of Decatur, Illinois; that its object was to promote growth in grace and Christian fellowship among its members, and aggressive Christian work, especially by and for young men, and to seek out and aid the worthy poor, and that the management of the association should be vested in a board of directors, consisting of the officers of said association and one active member from each religious denomination represented in such association, who are to be elected annually :" *Held*, that such association was not a corporation organized for the purpose of religious worship, within the meaning of the statute, and in the acquisition of real estate was not limited to ten acres.

5. SAME—*questioning the right—by whom.* Where a corporation may, for some purposes, acquire and hold title to real estate, it can not be made a question by any party, except the State, whether the real estate has been acquired for the authorized uses or not. Whether the corporation exceeds its power in receiving land by gift or devise, is a question alone for the State.

APPEAL from the Circuit Court of Macon county; the Hon. EDWARD P. VAIL, Judge, presiding.

This is a bill filed on May 23, 1889, in the Circuit Court of Macon County, by Anna Hamsher, in her own right, and Anna Hamsher and Milton Johnson, executors of the will of David F. Hamsher, deceased, against William Hamsher, Josephine Ringland, George Lacey Ringland, Allen Park, and the "Board of Directors of the Young Men's Christian Association of Decatur, Illinois," for the assignment of homestead to said Anna Hamsher, widow of David F. Hamsher, in a certain lot and the dwelling house thereon in Decatur, and for the partition of said lot, subject to the right of homestead, and also for the partition of another lot 100 feet wide by 150 feet deep in Decatur, and of 160 acres of land in Macon County, all owned in fee by David F. Hamsher at the time of his decease.

David F. Hamsher, being seized in fee of the two lots and of the 160 acres of land above referred to, died testate on February 15, 1889, leaving no children nor descendants of children.

and no brothers or sisters or descendants of brothers or sisters, but leaving his widow, the said Anna, and his father the defendant, William Hamsher, the appellant here, as his only heirs at law.

By items 2 and 3 of his will he devised and bequeathed to his wife, as her absolute property, the household and kitchen furniture and his horse and buggy, and to her, to have and hold during her life, the homestead lot, she to keep the taxes thereon paid. By item 4 he devised and bequeathed all the residue of his estate, real, personal or mixed, to the said executors to have and hold the same in trust and "for the special uses and purposes" thereinafter named. By item 5 he devised and bequeathed to his wife, Anna, an annuity of $1500.00 for and during her life, making the same a charge upon his residuary estate and directing it to be paid out of the trust estate in equal semi-annual installments, the first payment to be made within 60 days after his decease. By item 6 he devised and bequeathed to his "aged father," the appellant, an annuity of $600.00 for and during his life, making it a charge upon the residuary estate and directing it to be paid in quarterly installments of $150.00 each, the first within 60 days after his death. In item 7 he devised and bequeathed to Josephine Ringland, his wife's daughter by a former husband, $1000.00 to be paid out of the trust estate in equal semi-annual installments of $75.00 each except the first, which was to be for $150.00 and to be paid within 60 days after his decease; in case of her death before full payment, the remainder to be paid to the heirs of her body, etc. By the terms of item 8 the executors are directed to convert all the personal property, not mentioned in item 2, into money; to keep all surplus monies loaned out upon mortgages secured upon farming lands; to keep the farm of 160 acres above mentioned rented, and not to sell the same unless it becomes necessary to do so to pay special bequests. Item 9 directs that the bequests named in items 5, 6 and 7 be charges upon the rents and the interest

upon monies loaned, and, in case such rents and interest are insufficient to pay the bequests, they are to be paid out of the principal of such monies, and, if the latter are insufficient, then out of the real estate. Item 10 provides that the funeral expenses of testator's wife and father shall be paid out of his estate.

By item 11 of the will, the executors are to take possession of the residuary estate and manage and control it until all the special bequests and charges are fully paid, and, after the same are paid, then the executors are to pay George Lacey Ringland, son of said Josephine, the sum of $1000.00, or so much of said sum as there may be money enough to pay, upon his becoming 22 years of age, or, in case of his death before that time, to the heirs of his body, etc., or in case of his death without leaving such heirs, then said sum of $1000.00, or so much thereof as there may be on hand, "shall vest absolutely in the Board of Directors of the Young Men's Christian Association of Decatur, Illinois, and their successors for the benefit of said association." Item 11 also gives, devises and bequeaths absolutely all the estate, remaining after paying the special bequests and other charges, "of every kind and nature wherever situate, whether real, personal or mixed, to the Board of Directors of the Young Men's Christian Association of Decatur, Illinois, and to their successors for the use and benefit of said Association."

The will was duly admitted to probate in the county court of Macon County and letters testamentary were issued to the executors. The widow filed her renunciation of the provisions of the will in apt time in accordance with the statute in such cases, and elected to take, in lieu of dower and the share of the personalty accompanying dower, one half of the real and personal estate remaining after the payment of debts. (Starr & C. Ann. Stat. pages 902, 903 and secs. 11 and 12). This renunciation relieved the estate from the payment of the annuity of $1500.00, and, in her bill, the widow seeks partition

as the owner of an undivided one half of the real estate, setting up that the title to the other undivided half is in the executors.

The defendant William Hamsher answered the bill and also filed a cross-bill, which was subsequently amended. The answer and cross-bill, after stating all the facts substantially as here set forth, charge that the devise to the Board of Directors of the Young Men's Christian Association, as contained in item 11 of the will, is void upon the alleged ground that said association is a religious corporation, organized for religious purposes, and, as such, is forbidden by our statute to receive by devise any land exceeding in quantity ten acres, and the quantity devised to it by this will is in excess of ten acres.

The complainant in the cross-bill claims therein that, by reason of the renunciation of the widow and the void character of the devise to the Association, he is the owner of the undivided one half of the real estate, as sole heir of his deceased son, subject to the homestead rights of the widow, and prays that such devise be declared void, and for partition, etc. A demurrer to the cross-bill was sustained by the Circuit Court; the cross-bill was dismissed and partition was decreed in accordance with the prayer of the original bill; the commissioners appointed reported that the property was not susceptible of division; a decree of sale was accordingly entered and from such decree the present appeal is prosecuted.

It appears from the pleadings and proofs in the cause that the deceased testator left personal property to the amount of about $32,000.00, and that the values of the three pieces of real estate are as follows: homestead house and lot $3000.00; the other town lot $1500.00; the 160 acres $8000.00. It also appears from the evidence that one half of the personal property is sufficient to pay all the debts and also the three bequests to William Hamsher, Josephine Ringland and George Lacey Ringland. The defendant Park has no other interest in the premises than that of a mere tenant.

Messrs. BUNN & PARK, for the appellant:

If the Young Men's Christian Association is a religious corporation, within the meaning of section 42 of the Corporation law, the devise was void. *Barnes* v. *Suddard*, 117 Ill. 237; *Carroll* v. *East St. Louis*, 67 id. 568; *Starkweather* v. *Bible Society*, 72 id. 50; *Penn* v. *Bornman*, 102 id. 524; *Trust Co.* v. *Lee*, 73 id. 142; *Health Assurance Co.* v. *Rosenthal*, 55 id. 85; *Fridley* v. *Bowen*, 87 id. 151.

Under a limitation of the power to devise, not only the State, but an individual, whose interests will be affected by the transgression of the rule, may assert and insist on the limitations as a restriction upon the corporation to take. *Chamberlain* v. *Chamberlain*, 43 N. Y. Ct. of App. 429.

The same doctrine is laid down in *Price* v. *Maxwell*, 4 Casey, (Pa.) 23, and *McLean* v. *Wade*, 5 Wright, (Pa.) 266.

In *United States* v. *Fox*, 94 U. S. (4 Otto,) 315, the will was contested by infant heirs, and was held void by New York courts and by the United States Supreme Court.

If, as we claim, this association is incapable of taking the lands under the will, then the lands become intestate estate. 2 Redfield on Wills, 126, par. 22; *Taylor* v. *Keep*, 2 Bradw. 368; *Grand Tower Mining Co.* v. *Gill*, 111 Ill. 552.

Hamsher had a vested interest, even though it was subject to a charge or incumbrance, subject only to the payment of the legacies in case of deficiency of the personal estate. *Railsback* v. *Lovejoy*, 116 Ill. 442; *Hempstead* v. *Dickson*, 20 id. 193; *Scofield* v. *Olcott*, 120 id. 375; *Ruffin* v. *Farmer*, 72 id. 615.

If the devise of the lands to the Young Men's Christian Association is void, the devise of rents is void, as the rents descend to the heir. *Green* v. *Massie*, 13 Ill. 363; *Foltz* v. *Prouse*, 17 id. 493; *Dixon* v. *Niccolls*, 39 id. 380.

Messrs. MILLS BROS., and Mr. W. C. OUTEN, for the appellees:

The Young Men's Christian Association of Decatur, Illinois, does not come within the limitation of section 42, chapter 32,

of the Revised Statutes of Illinois, (1 Starr & Curtis, p. 623,) for the reason that it is evident from its organization that it is a corporation of the class "not for pecuniary profit," and because its purposes are, as shown by its charter, educational, humanitarian and charitable, rather than those of religious worship.

The Young Men's Christian Association of Decatur, Illinois, is claimed by appellant to be a corporation formed for "religious worship," and of the class authorized by section 35, chapter 32, of the Revised Statutes of Illinois, (1 Starr & Curtis, p. 621,) and hence subject to the limitation provided in section 42 of the same chapter, and unable to hold real estate in excess of ten acres.   Now, we insist that in this appellant is clearly in error.   There are three classes of corporations provided for by chapter 32:   First, "corporations for pecuniary profit;" second, "corporations not for pecuniary profit;" third, "religious corporations."   The method is provided in which corporations of each of these classes may be organized, and a different method is provided for each class.   Under the third class, no communication is had with the Secretary of State, and no certificate of incorporation is received from him.   In each of the other classes a charter must be had through him. In order to organize a corporation "not for pecuniary profit," a certificate must be prepared, stating the name by which said corporation shall be known, the objects for which it is formed, the number of its trustees, directors or managers, and the names of such trustees, directors or managers selected for the first year; and this certificate, after being signed and acknowledged, must be filed with the Secretary of State.   Upon the filing of this certificate, the Secretary of State issues a certificate of the organization of the corporation, under his hand and the seal of the State; and upon filing this certificate and accompanying papers in the office of the recorder of deeds in the county where its principal place of business is, the corporation is deemed fully organized.   (Secs. 29 and 30, chap. 32,

*supra.*) By section 35 of said act it is specifically provided that these provisions shall not apply to religious corporations.

The association is not a corporation formed for religious worship, and does not fall within the purpose of the prohibition in section 42. *Gilmer* v. *Stone*, 120 U. S. 586.

The right of a corporation to receive and hold property can only be called in question by the State. *Barnes* v. *Suddard*, 117 Ill. 237; *Alexander* v. *Tolleston Club*, 110 id. 65; *Christian Union* v. *Yount*, 101 U. S. 352; *DeCamp* v. *Dobbins*, 29 N. J. Eq. 36; *Bogardus* v. *Trinity Church*, 4 Sandf. 633; *Baker* v. *Neff*, 73 Ind. 68; *Jones* v. *Habersham*, 107 U. S. 174; *Hayward* v. *Davidson*, 41 Ind. 212.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

The appellees in this case make many points, some of which may be stated as follows : *first*, that the appellant has not and never can have a vested interest in the lands in controversy, but that the title, possession and control of the interest claimed by him is vested in the executors and remains there until after his death: *second*, that appellant is not a tenant in common with appellee Anna Hamsher, the widow of the deceased, and therefore not entitled to the partition prayed for in his cross-bill, but that the widow, as owner in fee of one half of the lands by virtue of her renunciation and election, and the executors, as being vested with the title in fee of the other half by operation of the will, are tenants in common and the only parties entitled to partition: *third*, that the right of the Board of Directors of the Young Men's Christian Association of Decatur to receive and hold so much of the real estate devised by item 11 of the will, as exceeds in quantity ten acres, can only be called in question by the State in a direct proceeding: *fourth*, that the appellant, by accepting the bequest of $600.00 per year to himself during his life, is estopped from setting up any right of his own that will defeat the full effect and operation of every part of the will: *fifth*, that "The Young Men's Christian Asso-

ciation of Decatur, Illinois," does not come within that class of religious corporations, which are forbidden by our statute to receive by devise more than ten acres of land, including land already held.

As the view, which we take of the fifth and last point, disposes of the material issues involved in the cause, we do not deem it necessary to decide either of the other positions taken by counsel for appellees.

David F. Hamsher died testate, leaving no child or descendants of a child. His surviving wife, Anna Hamsher, by reason of her renunciation and election under sections 11, 12 and 13 of the dower Act, is entitled to take one half of all the real and personal estate, subject to the payment of debts. The theory of the cross-bill, filed by the appellant in the court below, is, that item 11 of the will attempts to devise to "The Young Men's Christian Association of Decatur, Illinois," 160 acres of land, reduced by such renunciation and election of the widow to an undivided one half of 160 acres of land; that such devise is void under section 42 of our Act concerning corporations; which is hereinafter set forth; that, by reason of the void character of the devise, the land embraced in it must be regarded as intestate estate, and belongs to the appellant, as the father and sole surviving heir of the deceased testator.

Assuming the contention of the appellant to be correct, that the will devises to the Association in question land exceeding ten acres in quantity, including that already held by the Association, we are brought to the consideration of the question whether or not the Association can hold the land so devised.

Section 42 of the "Act concerning corporations," approved April 18, 1872, in force July 1, 1872, (Starr & C. Ann. Stat. page 623) is as follows: "Any corporation that may be formed for religious purposes under this Act, or under any law of this State for the incorporation of religious societies, may receive, by gift, devise or purchase, land not exceeding in quantity (including that already held by such corporation) ten acres, and

may erect or build thereon such houses, buildings or other improvements as it may deem necessary for the convenience and comfort of such congregation, church or society, and may lay out and maintain thereon a burying ground; but no such property shall be used except in the manner expressed in the gift, grant or devise, or, if no use or trust is so expressed, except for the benefit of the church, congregation or society for which it was intended."

From an examination of the sections, which precede, and of those, which follow, section 42, it becomes manifest that the corporations, intended to be designated by the latter section, are those churches, congregations or societies, which are organized for the purposes of "religious worship."

Sections from 29 to 34 inclusive of the Act have reference to "corporations not for pecuniary profit," providing for the mode of their organization, defining the nature and extent of their powers, specifying the methods of electing their trustees, of effecting their dissolution, of distributing their property, of changing their articles of association, etc. Sections from 35 to 46 inclusive have reference to "religious corporations." Section 35 begins as follows: "The foregoing provisions shall not apply to any religious corporations; but any church, congregation or society, *formed for the purpose of religious worship*, may become incorporated in the manner following, towit:"

The mode of organizing such a religious corporation is essentially different from that prescribed for organizing a corporation "not for pecuniary profit." In the latter case, three or more persons, desiring "to associate themselves for *any lawful purpose*, other than for pecuniary profit," make a certificate stating the name of the association, its business, the objects of its formation, the number and names of its trustees, managers or directors, etc., and file such certificate with the Secretary of State, who thereupon issues a certificate of organization, etc.

But in the organization of the religious corporations referred to in the statute, the church, congregation or society holds a

meeting and elects or appoints two or more of its members "as trustees, wardens and vestrymen," etc., and adopts a corporate name; and, where the chairman or secretary of the meeting has made and filed in the recorder's office of the county an affidavit as to the holding of such meeting and its action as aforesaid, the body politic and corporate is created.

The words, "such congregation, church or society," as used in sections 36, 41, 42 and 46, refer back to section 35, where the "church, congregation or society" intended to be designated is described as being "formed for the purpose of *religious worship*."

The view here expressed has been adopted by the Supreme Court of the United States. In *Gilmer* v. *Stone*, 120 U. S. 586, that Court had occasion to construe the section 42 now under consideration, and Mr. Justice Harlan, in delivering the opinion in that case, uses the following language: "The counsel for the plaintiff in error seem to lay stress upon the more general words, "formed for religious purposes," in the 42d section of the act; but manifestly the other parts of the same section, and previous sections, show that the only corporations intended to be restricted in the ownership of land to ten acres, were those formed for the purpose of "religious worship," and not organizations commonly called benevolent or missionary societies."

It now becomes necessary to inquire whether or not "The Young Men's Christian Association of Decatur, Illinois" is a corporation organized for the purposes of "religious worship." If it is not such a corporation, then the legislature, whether wisely or unwisely, has failed to place any restriction upon its receiving by "gift, devise or purchase" a quantity of land greater than ten acres.

The best evidence of the purposes of its formation is the declaration of such purposes as found in its charter, or articles of association. These articles are made a part of the cross-bill and attached thereto as an exhibit. They consist of a cer-

tificate in writing made, signed and acknowledged as required by section 29 of the corporation Act, and of a certificate of organization issued by the Secretary of State in accordance with section 30 of that Act. From the very nature of these articles, it is apparent that The Young Men's Christian Association of Decatur, Illinois, was organized as a corporation "not for pecuniary profit." If it had been organized under the act as a "religious corporation," the evidence of its incorporation would not be such articles of association as are above described, but would be the affidavit, or a certified copy thereof, mentioned in sections 35 and 36.

We agree with counsel for appellant, that a corporation, whose purpose is to engage in "religious worship," cannot circumvent the statutory restriction of its ownership of land to ten acres by effecting its organization under the sections in relation to "corporations not for pecuniary profit." Hence its character is to be determined not so much by the *mode* of its formation, as by the *object and purposes* of its formation.

The written certificate filed with the Secretary of State states, among other things, that "the name of such corporation is 'The Young Men's Christian Association of Decatur, Illinois;' the object for which it is formed is to promote growth in grace and Christian fellowship among its members, and aggressive Christian work especially by and for young men, and to seek out and aid the worthy poor; the management of the aforesaid Association shall be vested in a Board of Directors, consisting of the officers of said Association and one active member from each religious denomination represented in said Association, who are to be elected annually."

It is manifest from the provision thus made for the composition of the board of directors, that the Association is not under the control of one religious denomination, but is made up of representatives from a number of such denominations, while the corporation, which is forbidden by section 42 to receive more than ten acres of ground, is one which embodies

the ideas and principles of a single religious or ecclesiastical organization.

The written certificate of the Association does not state in express terms that it is formed "for the purpose of religious worship," nor can we say that the objects of its formation as declared in such certificate are necessarily the equivalents of certain forms of religious worship. Webster defines worship to be "the act of paying honors to the Supreme Being: religious reverence and homage: adoration paid to God, or a Being viewed as God." The Association in question seems, however, to contemplate a practical missionary and benevolent work, not only among its own members, but among the young and the poor who may need help outside of its membership. The object, for which it was formed, according to the description of such object in its articles of association, does not approach so nearly the definition of "religious worship," as do the announced objects of the two societies mentioned in *Gilmer* v. *Stone, supra.* There, it appeared that a Board of Foreign Missions was formed "for the purpose of establishing and conducting Christian missions among the unevangelized or pagan nations and the general diffusion of Christianity," and that a Board of Home Missions had for its object "to assist in sustaining the preaching of the Gospel in feeble churches," etc., and "to superintend the whole of home missions in the behalf" of certain churches, and "to receive   *   *   *   and disburse  *   *   *   funds  *   *   *   for home missionary purposes"; and it was there held that neither of said Boards was "a church, congregation or society formed for the purpose of religious worship."

It does not appear, that "The Young Men's Christian Association of Decatur, Illinois" exercises any ecclesiastical control over its members, or prescribes any form of worship for them, or subjects those, who fail to conform to its rules, to ecclesiastical discipline. Therefore, a limitation upon the extent of its ownership of real estate is not so imperatively demanded

by those considerations of public policy, which apply to corporations formed for the purpose of religious worship.

We are of the opinion that said Association is not subject to the restriction contained in section 42 of the Corporation Act, and that the devise to it of a greater quantity of land than ten acres is not invalid. It follows, that the appellant takes nothing as heir, and that his cross-bill was properly dismissed.

Counsel for appellant claim, that, even if the Association was properly organized as a corporation "not for pecuniary profit," it can only take and hold so much real estate as is necessary for the purposes of its organization, and that the will gives it more land than it needs for such purposes. By section 31 of the Corporation Act, corporations "not for pecuniary profit" are made capable, in law, "of taking, purchasing, holding and disposing of real and personal estate for purposes of their organization." Such corporations are thus clothed with the capacity of holding real estate. If The Young Men's Christian Association of Decatur "has exceeded in extent its power of holding real estate, appellant, we conceive, cannot take advantage of the fact." (*Alexander* v. *Tolleston Club*, 110 Ill. 65.) Where a corporation may, for some purposes, acquire and hold the title to real estate, it cannot be made a question by any party, except the State, whether the real estate has been acquired for the authorized uses or not. (*Hayward* v. *Davidson*, 41 Ind. 214). There being capacity to purchase or to receive by devise, whether the corporation, in so purchasing or receiving, exceeds its power is a question between it and the State, and does not concern appellant. (Dillon on Mun. Corp. sec. 444).

We perceive no error in the record. The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*